FILED

AUG 19 2026

Bonnie N. Hackler, Acting Clerk
U.S DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

26 CV - 5 1 1 GKF - CDL

**RONALD JAMES LAMB, JR.,**

**Plaintiff,**

**v.** Defendants 1-9

**GALLAGHER BASSETT SERVICES, INC.; Pafford EMS of Oklahoma, Inc.; HEFLIN MEDICAL, LLC; TARA A. INHOFE, in her official capacity as Administrative Law Judge, Oklahoma Workers' Compensation Commission; OKLAHOMA WORKERS' COMPENSATION COMMISSION; GENTNER DRUMMOND, in his official capacity as Attorney General of Oklahoma; THE STATE OF OKLAHOMA; KATHRYN BLACK, individually and as an attorney; NICK CREWS, individually and as an attorney; and JOHN/JANE DOES 1-10,**

**Defendants.**

---

**Case No. _______________**

**FEDERAL COMPLAINT FOR BAD FAITH, CONSTITUTIONAL VIOLATIONS, CIVIL RIGHTS DEPRIVATIONS, LEGAL MALPRACTICE, FRAUD, AND INTENTIONAL TORTS**

**JURY TRIAL DEMANDED**

---

**Plaintiff, Ronald James Lamb, Jr., acting pro se, respectfully submits this Federal Complaint and alleges as follows:**

## I. INTRODUCTION AND NATURE OF ACTION

1. This is an action for declaratory and injunctive relief, monetary damages, and punitive damages arising from the deliberate, malicious, and unconstitutional conduct of the Defendants in denying life-saving medical treatment to a catastrophically injured workers' compensation claimant, manipulating medical records, fraudulently terminating benefits, and systematically depriving Plaintiff of his constitutional rights to life, liberty, property, due process, equal protection, and access to the courts.

-IFP
-6 Summons

2. This action arises under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment Due Process and Equal Protection Clauses; the Fifth Amendment Due Process Clause; Oklahoma common law for bad faith, fraud, negligence, and intentional infliction of emotional distress; the Oklahoma Unfair Claims Settlement Practices Act, 36 O.S. §§ 1250.1 et seq.; the Oklahoma Constitution, Article 2, Sections 7 and 6; and common law legal malpractice.

3. This is not a workers' compensation benefits dispute. This is an action for independent tortious conduct, constitutional violations, and civil rights deprivations that occurred outside the scope of the Oklahoma Workers' Compensation Act, involving intentional acts of fraud, bad faith, and deprivation of constitutional rights that caused injuries separate and distinct from the original work-related knee injury.

## II. JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants Gallagher Bassett Services, Inc., Pafford EMS of Oklahoma, Inc., and Heflin Medical, LLC transact business and maintain operations within this district.

7. Plaintiff has exhausted all available state administrative remedies. The Oklahoma Workers' Compensation Commission, its Administrative Law Judges, the Oklahoma Attorney General, the Council on Judicial Complaints, and the Oklahoma Insurance Department have all refused to provide adequate remedy or have affirmatively obstructed Plaintiff's right to relief.

8. On June 9, 2026, the Council on Judicial Complaints issued a formal determination that it lacks jurisdiction to investigate complaints against Administrative Law Judges of the Oklahoma Workers' Compensation Commission because Oklahoma Attorney General Gentner Drummond issued Attorney General Opinion 2024-17, which reclassified such judges as executive branch officials outside the Council's

authority. A true and correct copy of this determination is attached hereto as **Exhibit A.**

9. This reclassification and the resulting denial of judicial oversight constitute a structural deprivation of access to courts and accountability mechanisms, forcing Plaintiff into federal court as the only remaining forum capable of adjudicating his constitutional claims.

## III. PARTIES

### A. Plaintiff

10. **Plaintiff Ronald James Lamb, Jr.** is an individual mailing at 8703 N Owasso Expwy, Ste R132, Owasso, Oklahoma 74055. At all relevant times, Plaintiff was employed by Pafford EMS of Oklahoma, Inc. as an emergency medical services professional Paramedic. On February 24, 2024, Plaintiff sustained a compensable on-the-job injury to his right knee while performing his job duties. Plaintiff is currently totally disabled, unable to work, and suffering from permanent physical and mental injuries caused and exacerbated by Defendants' intentional misconduct.

### B. Defendants

11. **Defendant Gallagher Bassett Services, Inc.** ("Gallagher Bassett" or "GB") is a foreign corporation authorized to do business in Oklahoma and is the third-party claims administrator and/or insurer handling workers' compensation claims for Pafford EMS of Oklahoma, Inc. GB is responsible for authorizing, paying for, and managing all medical treatment and temporary disability benefits for Plaintiff's work-related injury. GB transacts business in the Northern District of Oklahoma.

12. **Defendant Pafford EMS of Oklahoma, Inc.** ("Pafford EMS") is an Oklahoma corporation and Plaintiff's statutory employer at the time of injury. Pafford EMS contracted with or otherwise engaged Gallagher Bassett to administer its workers' compensation claims.

13. **Defendant Heflin Medical, LLC** ("Heflin Medical") is an Oklahoma medical services company retained by Gallagher Bassett to perform utilization review, medical case management, and progress reporting to the Oklahoma Workers' Compensation Commission. Heflin Medical acted as an agent and/or co-conspirator of Gallagher Bassett in manipulating medical records, misrepresenting Plaintiff's medical condition to the Commission, and facilitating the denial of medically necessary treatment.

14. **Defendant Tara A. Inhofe** ("Judge Inhofe") is sued in her official capacity as an Administrative Law Judge for the Oklahoma Workers' Compensation Commission. At all relevant times, Judge Inhofe presided over Plaintiff's workers' compensation case, CM3-2024-05208K. Judge Inhofe is a state actor acting under color of state law.

15. **Defendant Oklahoma Workers' Compensation Commission** ("WCC") is a state agency of the State of Oklahoma. The WCC is responsible for adjudicating workers' compensation claims and ensuring that injured workers receive statutorily mandated benefits. The WCC is a state actor acting under color of state law.

16. **Defendant Gentner Drummond** is sued in his official capacity as the Attorney General of the State of Oklahoma. In his official capacity, Drummond issued Attorney General Opinion 2024-17, which removed oversight authority from the Council on Judicial Complaints over WCC Administrative Law Judges, thereby shielding such judges from accountability for constitutional violations. Drummond has also refused to investigate or respond to Plaintiff's complaints regarding insurance fraud, bad faith, and deprivation of rights. Drummond is a state actor acting under color of state law.

17. **Defendant The State of Oklahoma** is a sovereign state. The State, through its agencies and officials, has a duty to provide Plaintiff with access to courts, due process, and protection of his constitutional rights.

18. **Defendant Kathryn Black** ("Black") is an attorney formerly licensed to practice law in the State of Oklahoma and formerly retained by Plaintiff to represent him in his workers' compensation claim. Black abandoned Plaintiff, protected fraudulent conduct by Heflin Medical, concealed material medical evidence from the court and from Plaintiff, and placed an improper attorney lien on Plaintiff's workers' compensation case after withdrawing from representation. Black is sued individually and as an attorney.

19. **Defendant Nick Crews** ("Crews") is an attorney licensed to practice law in the State of Oklahoma and served as opposing counsel for Defendant Gallagher Bassett Services, Inc. and/or Pafford EMS of Oklahoma, Inc. in Plaintiff's workers' compensation case, CM3-2024-05208K. Crews is sued individually for acts of tortious interference with the physician-patient relationship, fraud, intentional misrepresentation, and intentional misconduct committed outside the scope of attorney immunity, including but not limited to: personally contacting treating physicians to steer medical care away from medically necessary treatment; refusing

and blocking referrals ordered by Dr. Nusrat for further necessary care; falsely representing that prescriptions were approved when they were not; repeatedly moving to dismiss WCC hearings despite unaddressed consequential injuries; conspiring with Gallagher Bassett and Heflin Medical to deny life-saving medication; and participating in the wrongful dismissal of Dr. Zimmerman while Plaintiff had active DVTs and PEs.

20. **Defendants John/Jane Does 1-10** are individuals and/or entities whose true identities are unknown to Plaintiff at this time but who participated in, facilitated, or concealed the fraudulent, unconstitutional, and tortious conduct alleged herein. Plaintiff will amend this Complaint to identify these Defendants when their identities become known.

### C. Agency and Conspiracy Allegations

21. At all relevant times, Gallagher Bassett acted as the agent, alter ego, and/or co-conspirator of Pafford EMS in administering workers' compensation benefits. Heflin Medical acted as the agent, alter ego, and/or co-conspirator of Gallagher Bassett in conducting utilization review, preparing fraudulent progress reports, and manipulating medical evidence. Nick Crews acted as an agent, co-conspirator, and/or joint tortfeasor with Gallagher Bassett and Heflin Medical in interfering with Plaintiff's medical care, blocking physician referrals, and obstructing access to courts.

22. The Defendants acted in concert, by agreement, and/or through a common scheme to deny Plaintiff life-saving medical treatment, terminate his disability benefits, manipulate medical records, steer medical professionals away from necessary care, and deprive him of his constitutional rights. Each Defendant is liable for the acts of the others under principles of agency, conspiracy, and joint tortfeasance.

## IV. STATEMENT OF FACTS

### A. The Original On-the-Job Injury and Medical Treatment

22. On or about February 24, 2024, Plaintiff Ronald James Lamb, Jr. sustained a traumatic on-the-job injury to his right knee while performing his duties as an emergency medical services professional for Defendant Pafford EMS of Oklahoma, Inc. Plaintiff's right leg struck the metal door frame of an ambulance, causing fall and severe trauma.

23. On February 26, 2024, Plaintiff sought treatment with orthopedic surgeon Dr. Jason Griffin. MRI imaging revealed medial meniscus tear, Hoffa's fat pad impingement,

and prepatellar bursitis. Dr. Griffin performed the first right knee arthroscopy on April 8, 2024.

24. Following the first surgery, Plaintiff developed a Deep Vein Thrombosis (DVT) in his right lower extremity, diagnosed on April 11, 2024, via Doppler ultrasound. This post-operative DVT was a direct consequence of the surgery and immobilization. The Doppler showed thrombus in the peroneal and posterior tibial veins.

25. On April 22, 2024, Dr. Griffin referred Plaintiff to a hematologist for evaluation of hypercoagulability and management of anticoagulation therapy. This was the first of four separate physician referrals to a hematologist that Gallagher Bassett systematically ignored, obstructed, or denied over a period of approximately two years.

26. From April through August 2024, Leticia Enriquez at Premier Family Care managed Plaintiff's anticoagulation with Xarelto. During this period, bloodwork testing for genetic and acquired thrombophilias was conducted, including Factor V Leiden, prothrombin mutation, lupus anticoagulant, and antiphospholipid antibodies—all of which returned NEGATIVE. These negative results definitively ruled out pre-existing genetic or autoimmune causes for Plaintiff's blood clotting disorder, establishing that the clots were caused by the work-related vascular injury and inadequate anticoagulation management.

27. On August 30, 2024, Dr. Nunley (Orthopedic Specialist) performed an ultrasound-guided injection for Hoffa's fat pad impingement, which had been diagnosed as a consequential condition of the original knee injury.

28. On October 14, 2024, Dr. Griffin performed a second MRI, which showed a new tear of the posterior horn of the medial meniscus and worsening chondromalacia patella. On November 13, 2024, Dr. Griffin referred Plaintiff to Dr. Jay Lorton for repeat surgery.

29. On January 31, 2025, Dr. Lorton performed a second right knee arthroscopy with partial meniscectomy and chondroplasty. Following this second surgery, Plaintiff again developed a post-operative DVT, diagnosed on February 5, 2025. The recurrent DVTs following both knee surgeries established a clear pattern: Plaintiff's right leg vascular system had been permanently compromised by the work injury and surgeries, requiring lifelong anticoagulation.

**B. Gallagher Bassett's Systematic Denial of Life-Saving Anticoagulation Medication**

30. Despite the catastrophic consequences of insufficient anticoagulation—including recurrent DVTs, life-threatening pulmonary embolisms, and permanent venous damage—Defendant Gallagher Bassett engaged in a deliberate, systematic, and malicious campaign to deny, delay, and discontinue FDA Black Box Warning anticoagulation medications—specifically Xarelto (rivaroxaban) and Eliquis (apixaban)—prescribed by every single treating physician. The FDA has issued its most serious warning, a Black Box Warning, for both Xarelto and Eliquis, specifically cautioning that abrupt discontinuation or interruption of these medications increases the risk of thrombotic events, including stroke, deep vein thrombosis (DVT), and pulmonary embolism (PE). The FDA Black Box Warning explicitly states that these medications should not be stopped prematurely without adequate alternative anticoagulation, as discontinuation can trigger rebound hypercoagulability and life-threatening clot formation. Gallagher Bassett knew or should have known of these FDA warnings when it repeatedly denied and discontinued these medications.

31. The following FDA Black Box Warning anticoagulation medications were prescribed by Plaintiff's treating physicians and denied, delayed, or discontinued by Gallagher Bassett:

- **Xarelto (Rivaroxaban)**: An FDA Black Box Warning anticoagulant prescribed by Premier Family Care (Leticia Enriquez) beginning April 2024 for post-operative DVT prevention and management; denied and discontinued by GB despite confirmed post-operative DVT and the FDA's explicit warning that abrupt discontinuation increases thrombotic risk.

- **Eliquis (Apixaban)**: An FDA Black Box Warning anticoagulant prescribed by Dr. Grace Kennedy (Pulmonology) beginning May 2025 for pulmonary embolism management and recurrent DVT prevention; denied by GB. Dr. Kennedy was forced to personally pay for Plaintiff's Eliquis out of her own pocket for multiple/TBD months to keep Plaintiff alive after GB refused to authorize the medication, directly contrary to the FDA Black Box Warning that discontinuation increases risk of stroke, DVT, and PE.

- **Lifelong Anticoagulation with Eliquis**: Ordered by Dr. Muhammad Nusrat (Hematology/Oncology) on April 27, 2026, as "indefinite" and "lifelong" due to chronic recurrent DVTs, post-thrombotic syndrome, and permanently damaged

venous valves; denied by GB in direct contravention of the FDA Black Box Warning requiring continued anticoagulation to prevent thrombotic events.

32. Gallagher Bassett's denials were not merely administrative errors. They were intentional, repeated, and life-threatening. GB denied anticoagulation medication prescribed by:

- Dr. Jason Griffin (Orthopedic Surgeon)
- Leticia Enriquez / Premier Family Care (Primary Care/Anticoagulation Management)
- Dr. Grace Kennedy (Pulmonologist)
- Dr. Muhammad Nusrat (Hematologist)
- Dr. Jay Lorton (Orthopedic Surgeon)
- Dr. Nevan White (Primary Care Physician)
- Dr. Zimmerman (Cardiologist)
- Approximately 6/TBD ER doctors

33. In May 2025, Plaintiff presented to St. Francis Hospital Emergency Room coughing blood, experiencing severe chest pain, and suffering from classic pulmonary embolism symptoms. This life-threatening emergency was caused by Gallagher Bassett's refusal to authorize Xarelto refills, in direct violation of the FDA Black Box Warning that abrupt discontinuation of Xarelto increases the risk of thrombotic events including PE. CT imaging confirmed multi-lobar pneumonia and PE-related complications. This was not the first or the last time GB's refusal to authorize FDA Black Box Warning anticoagulation medication would send Plaintiff to the emergency room.

34. On July 16, 2025, Plaintiff presented to St. John Owasso Emergency Room with a third DVT—a partially occlusive thrombus in the right peroneal vein—after missing Eliquis doses due to inaccessible medication and Gallagher Bassett's continued refusal to authorize coverage and pharmacy delays, contrary to the FDA Black Box Warning that interruption of Eliquis increases thrombotic risk.

35. On October 11, 2025, while traveling out of state, Plaintiff contacted Helfin Medical and Legal due to severe DVT in which they did not respond to help with urgent medical complications, then Plaintiff later presented to CoxHealth Emergency Room in Branson, Missouri, with acute shortness of breath and chest pain, explicitly concerned he "might have a pulmonary embolism." The triage note confirmed: "was

on eliquis and ran out, refill was not authorized." This documentation directly attributes the life-threatening emergency to Gallagher Bassett's refusal to authorize Eliquis, in violation of the FDA Black Box Warning that abrupt discontinuation of this anticoagulant increases the risk of thrombotic events.

36. On December 1, 2025, Plaintiff presented to Hillcrest Hospital due to acute chest pain, shortness of breath, history of blood clots to the lungs and severe pain in right calf/DVT less than 24-hours prior.

37. On January 5-6, 2026, Plaintiff presented to St. John Owasso Emergency Room and then St. Francis Hospital with a fourth DVT—this time a complete, occlusive, non-compressible thrombus in the right peroneal vein. D-Dimer was elevated at 0.75. Plaintiff was experiencing shortness of breath and right-sided chest pain, consistent with recurrent pulmonary embolism. This fourth DVT represented the culmination of Gallagher Bassett's two-year campaign of medication denial.

38. On April 27, 2026, hematologist Dr. Muhammad Nusrat conducted a comprehensive evaluation and definitively ruled out all pre-existing genetic and autoimmune causes for blood clotting. Dr. Nusrat concluded that Plaintiff's recurrent chronic DVTs and pulmonary embolisms were caused by "improper anticoagulation therapy" and "acutely stopping anticoagulation therapy," which had "triggered multiple pulmonary embolisms." Dr. Nusrat ordered indefinite, lifelong anticoagulation with FDA Black Box Warning Eliquis (apixaban) 5 mg twice daily. Gallagher Bassett refused to authorize this life-saving treatment in direct contravention of the FDA's most serious warning that discontinuing Eliquis increases the risk of stroke, DVT, and PE.

39. Gallagher Bassett's conduct continued through June 2026—over two full years of denying and discontinuing FDA Black Box Warning anticoagulation medications (Xarelto and Eliquis) against the explicit orders of every treating physician and in direct violation of the FDA's most serious safety warnings. During this period, Plaintiff was forced to rely on the charity of his pulmonologist, Dr. Grace Kennedy, who personally paid for his Eliquis for multiple months to prevent his death from pulmonary embolism—a situation necessitated entirely by GB's refusal to comply with FDA Black Box Warning requirements for continued anticoagulation.

**C. Heflin Medical's Fraudulent Misrepresentation to the Workers' Compensation Commission**

40. Defendant Heflin Medical, LLC, acting as Gallagher Bassett's agent and medical case manager, prepared and submitted a series of fraudulent "Progress Reports" to

the Oklahoma Workers' Compensation Commission that systematically omitted, concealed, and misrepresented Plaintiff's true medical condition for the express purpose of denying benefits.

41. Heflin Medical's Progress Reports #4 through #9, submitted between January 2025 and May 2025, committed the following intentional misrepresentations:

- Falsely claiming Plaintiff had reached Maximum Medical Improvement (MMI) when he had active, recurrent DVTs, pulmonary embolisms, and unaddressed orthopedic conditions.
- Completely omitting all five DVT events, including the occlusive thrombus documented by Doppler ultrasound.
- Completely omitting all pulmonary embolism events, including the PE diagnosed by Dr. Kennedy and the multiple ER visits for chest pain and hemoptysis.
- Omitting venous insufficiency measurements showing severe reflux.
- Falsely claiming Plaintiff was "able to return to work" when he was under active physician work restrictions and experiencing life-threatening clotting events.
- Omitting that Plaintiff was on active anticoagulation therapy and that such therapy had been discontinued by GB.
- Falsely representing that Plaintiff had "no new injuries or conditions" when he had documented new DVTs, PEs, and left knee deterioration.

42. Heflin Medical's misrepresentations were not clerical errors. They were intentional acts of fraud designed to create a false medical record that would justify Gallagher Bassett's denial of medication, termination of temporary disability benefits, and resistance to further medical treatment. Heflin Medical acted in concert with Gallagher Bassett to manufacture a false narrative that Plaintiff's condition was stable and that no further treatment was needed.

**D. Fraudulent Alteration of Medical Records and Manufactured MMI**

43. On May 7, 2026, at 1:39 PM, Dr. Jay Lorton signed a "Request for Preauthorization / Attending Physician's Report" in which the box for "Maximum Medical Improvement (MMI)" was NOT checked. Dr. Lorton's note indicated ongoing disability, work restrictions, and multiple unaddressed consequential injuries.

44. On May 11, 2026, at 1:32 PM, a second version of the same form was generated in which the MMI box WAS checked. This altered document was not signed by Dr.

Lorton at the time of the original examination. The alteration was made at the request of Gallagher Bassett or its agents after GB personnel contacted Dr. Lorton's nursing staff.

45. The nursing staff at Dr. Lorton's office, on Plaintiff's recorded phone call, confirmed to Plaintiff that "workman compensation called and requested the MMI box be checked." This constitutes direct evidence of Gallagher Bassett's fraudulent scheme to alter medical records for the purpose of wrongfully terminating Plaintiff's temporary total disability (TTD) benefits.

46. The fraudulent MMI alteration directly resulted in Gallagher Bassett's termination of Plaintiff's weekly TTD payments in May 2026, leaving Plaintiff with absolutely no income while he is permanently disabled, unable to work, and suffering from life-threatening medical conditions.

47. Gallagher Bassett also directed or facilitated the alteration of medical records at Premier Family Clinic and by Dr. Zimmerman. Dr. Zimmerman's records were modified to minimize the severity of Plaintiff's cardiovascular complications, and Dr. Zimmerman ultimately discharged Plaintiff as a patient at Gallagher Bassett's request or influence while Plaintiff was actively experiencing DVTs and pulmonary embolisms. Defendant Nick Crews, while serving as opposing counsel, personally contacted treating physicians to steer medical care away from medically necessary treatment, including refusing and blocking referrals ordered by Dr. Nusrat for further necessary care. Crews, who is not a medical professional, repeatedly substituted his non-medical judgment for that of Plaintiff's treating physicians, contacted multiple doctors to influence Plaintiff's care, and participated in the wrongful dismissal of Dr. Zimmerman and Dr Lorton while Plaintiff had active DVTs and PEs. Crews also falsely represented in May 2026 that prescriptions had been approved at CVS when they had not, and repeatedly moved to dismiss WCC hearings despite unaddressed consequential injuries, conspiring with Gallagher Bassett and Heflin Medical to deny life-saving FDA Black Box Warning anticoagulation medication (Xarelto and Eliquis) and obstruct Plaintiff's access to justice.

**E. The Consequential Injuries and Permanent Damages**

48. Gallagher Bassett's two-year campaign of medication denial and treatment obstruction caused the following permanent, life-threatening, and catastrophic injuries:

a. **Five documented Deep Vein Thromboses (DVTs)** in the right lower extremity, including occlusive and partially occlusive thrombi.

b. **Multiple life-threatening Pulmonary Embolisms (PEs)**, including the May 2025 hemoptysis event, the October 2025 Branson ER visit, and recurrent chest pain episodes.

c. **Chronic Venous Insufficiency / Post-Thrombotic Syndrome** with severe venous reflux and permanently damaged venous valves.

d. **Permanent Disability**: Dr. Lorton assessed permanent disability. Plaintiff received an Oklahoma Permanent Disability Placard (A426759). Plaintiff cannot sit in a vehicle for more than approximately 30 minutes before severe pain and swelling from venous deficiency incapacitate him.

e. **Left Knee Consequential Injury**: The left knee has deteriorated due to compensatory gait and overuse, but Gallagher Bassett has refused to evaluate or treat this consequential injury despite complaints filed nearly one year ago.

f. **Right Knee Deterioration**: The original work injury has worsened, with Hoffa's fat pad impingement, chondromalacia, and meniscal damage causing chronic pain and functional limitation.

g. **Post-Traumatic Stress Disorder (PTSD)**: Caused by repeated life-threatening medical emergencies, near-death experiences from pulmonary embolisms, and the intentional deprivation of life-saving medication by Defendants.

h. **Major Depressive Disorder with Suicidal Ideation**: Directly caused by Defendants' intentional conduct, financial devastation, loss of housing, loss of an eight-year relationship, and complete abandonment by the workers' compensation system.

i. **Financial Catastrophe**: Over $25,000 in unpaid medical bills placed in Plaintiff's personal name; utility shutoffs; loss of housing; repossession threats; and complete inability to meet basic needs.

**F. The Worsening Venous Condition Confirmed by Dr. Barkat**

49. Following the original venous mapping performed by cardiologist Dr. Zimmerman in 2025, which documented significant venous insufficiency, Plaintiff underwent a subsequent venous mapping performed by intrathoracic surgeon Dr. Barkat.

50. Dr. Barkat's testing confirmed the original venous mapping findings and revealed **severe venous deficiency with multiple 4-second reflux** in the right lower extremity—representing a worsening of Plaintiff's condition since the original 2025 study.

51. The progressive worsening of Plaintiff's venous condition—from documented insufficiency to severe 4-second deficiency—is directly attributable to Gallagher

Bassett's continued refusal to provide anticoagulation medication over the two-year period from April 2024 through June 2026. Each untreated DVT caused additional damage to venous valves and walls, resulting in irreversible venous incompetence. Amputation above the right knee, is now the only POSSIBLE correction after permanent damages have been done to veins and valves now.

52. Dr. Barkat's findings confirm that Gallagher Bassett's medication denials did not merely fail to prevent injury; they actively caused progressive, permanent deterioration of Plaintiff's vascular system, creating a condition that will require lifelong medical management and has permanently disabled Plaintiff from gainful employment.

**G. Attorney Misconduct and Abandonment**

53. Plaintiff retained attorney Kathryn Black to represent him in his workers' compensation claim. Instead of advocating for Plaintiff's rights, Black:

- Intentionally protected the fraudulent conduct of Heflin Medical;
- Concealed Dr. Kennedy's pulmonology reports documenting life-threatening pulmonary embolisms from the court and from Plaintiff;
- Failed to challenge Heflin Medical's fraudulent progress reports;
- Failed to compel Gallagher Bassett to authorize prescribed medication;
- Failed to address the alteration of medical records;
- Permitted Heflin Medical to discharge Plaintiff from Dr. Zimmerman's care while he was actively experiencing DVTs and PEs;
- Violated her fiduciary duty to Plaintiff by acting in the interests of the workers' compensation defense establishment rather than her client.

54. When Plaintiff confronted Black regarding her failure to address the fraud and her inadequate representation, Black removed herself from the case. Upon withdrawing, Black placed an improper attorney lien on Plaintiff's workers' compensation case, seeking to extract fees for representation that actively harmed Plaintiff.

55. Plaintiff subsequently retained attorney Hahn. Hahn expressly promised Plaintiff, in recorded conversations, emails, and text messages, that he would personally contact Kathryn Black and inform her that she must remove her lien from the case

or face a complaint with the Oklahoma Bar Association and a lawsuit. Hahn represented that he would resolve this issue.

56. Months later, Hahn has failed to respond regarding Black's improper lien. Hahn has not responded to Plaintiff's text messages, emails, and phone calls regarding the lien, Bad Faith and case matters involving corrupted Oklahoma State administrative proceedings, now presented in Federal Court for relief.

**H. The Oklahoma Workers' Compensation System's Constitutional Failure**

57. Plaintiff has filed formal complaints with every available state entity:

- Gallagher Bassett Insurance;
- Pafford EMS;
- Both legal parties (Black and Hahn);
- Oklahoma Attorney General Gentner Drummond;
- Oklahoma Workers' Compensation Commission;
- Oklahoma Insurance Department;
- Council on Judicial Complaints;
- Board of Nursing
- HIPPA Violation entities/Civil Rights
- Oklahoma Bar Association will soon be informed (regarding Black).

58. Every single state entity has either refused to respond, refused to investigate, or affirmatively obstructed Plaintiff's access to remedy:

- **Oklahoma Attorney General Gentner Drummond and OK AG Office:** Despite being the chief law enforcement officer charged with investigating insurance fraud and workers' compensation violations, Drummond has refused to respond to complaints, calls, emails, and certified letters. Drummond has abandoned his duty to protect Oklahoma citizens from insurance fraud and bad faith.
- **Council on Judicial Complaints:** On June 9, 2026, the COJC issued a formal letter acknowledging receipt of Plaintiff's complaint against Judge Inhofe but declining to investigate based on Attorney General Opinion 2024-17, which Drummond issued on November 11, 2024. The Opinion reclassified WCC Administrative Law Judges as executive branch officials and stripped the COJC of jurisdiction to investigate them.

The COJC stated it was "without jurisdiction to investigate the complaint you filed against an Administrative Law Judge in the executive branch." This Opinion and the resulting jurisdictional void have created an unconstitutional immunity shield for WC judges, insulating them from any accountability for misconduct, bias, or constitutional violations.

- **Oklahoma Workers' Compensation Commission**: The WCC has failed to enforce its own orders, failed to sanction Gallagher Bassett for contempt, and permitted the fraudulent progress reports and altered MMI documents to control the proceeding.
- **Oklahoma Insurance Department**: Has failed to investigate or sanction Gallagher Bassett for violations of the Unfair Claims Settlement Practices Act and fraud.

59. Attorney General Opinion 2024-17 and the resulting deprivation of judicial oversight constitute a structural constitutional defect. The Oklahoma Legislature placed workers' compensation adjudication within an administrative agency, and the Attorney General has now removed that agency from judicial oversight. The result is a system in which Administrative Law Judges are simultaneously adjudicators and executive branch employees, with no independent judicial review of their conduct. This violates the separation of powers principles inherent in the Oklahoma Constitution and the Fourteenth Amendment Due Process Clause.

### I. Current Status and Ongoing Irreparable Harm

60. As of the filing of this Complaint, Plaintiff remains totally disabled and unable to return to work. He has received no weekly temporary total disability payments since May 2026. He has no income, no ability to pay for housing, utilities, food, or transportation. He has lost his eight-year relationship. He experiences severe, recurring suicidal ideation caused by the physical pain, financial devastation, and complete abandonment by every system that was supposed to protect him.

61. Plaintiff's leg is permanently damaged to the point that he can only sit in a vehicle for approximately 30 minutes before severe pain and swelling from venous deficiency incapacitate him. He lives one hour from a major city, making medical access nearly impossible without assistance.

62. Gallagher Bassett has long history of refusing to pay for the FDA Black Label anticoagulation medication that all treating physicians have ordered as lifelong, permanent therapy. Plaintiff's life remains in immediate jeopardy from the risk of additional DVTs and pulmonary embolisms. Multiple attempts to discontinue all benefits, attempting to force Plaintiff back in his paramedic firefighting profession past 24-years is a death sentence and Workman Compensation; as Plaintiff's

informed he cannot medically retire at his age, further discriminating Plaintiff who served 24-years of state requirement of firefighter/paramedics, sacrificing his our body and mind. Social Security has denied benefits due to age, despite Plaintiff totally disabled, unable to work, being refused medical care/treatment, in bad faith and fraud, discriminated against due to age, despite 24-years selflessly saving lives for a living.... Now being neglected/treated as his life is worth nothing after an on the job injury serving his community, helping others.

63. The Oklahoma Workers' Compensation system has failed Plaintiff at every level. The federal courts are the only remaining forum capable of adjudicating his constitutional claims, remedying the bad faith torts, and preventing his death from intentional insurance misconduct.

## V. CAUSES OF ACTION

### COUNT I

### DEPRIVATION OF PROCEDURAL DUE PROCESS

**(42 U.S.C. § 1983 Against Judge Inhofe, the WCC, and the State of Oklahoma)**

64. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

65. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

66. Plaintiff possessed a constitutionally protected property interest in his workers' compensation benefits, including medical treatment and temporary/permanent disability payments, which are vested statutory rights under the Oklahoma Workers' Compensation Act, 85A O.S. §§ 1 et seq.

67. Plaintiff possessed a constitutionally protected liberty interest in his physical health and bodily integrity, which was implicated by Defendants' actions in denying life-saving anticoagulation medication and depriving him of medical care necessary to prevent death from pulmonary embolism.

68. Defendants Judge Inhofe, the WCC, and the State of Oklahoma, acting under color of state law, deprived Plaintiff of these property and liberty interests through the following procedural due process violations:

a. **Failure to Provide a Fair and Impartial Tribunal**: Judge Inhofe presided over proceedings in which Gallagher Bassett and Heflin Medical submitted fraudulent medical

records, altered MMI documents, and intentionally false progress reports. Judge Inhofe failed to investigate, failed to sanction, and permitted these fraudulent documents to control the proceeding, thereby denying Plaintiff a fair hearing.

b. **Denial of Access to Courts and Remedy:** Through Attorney General Opinion 2024-17, Defendant Drummond and the State of Oklahoma removed WCC Administrative Law Judges from the oversight authority of the Council on Judicial Complaints. The WCC then directed Plaintiff to the COJC for judicial misconduct complaints. The COJC, bound by Drummond's Opinion, refused to investigate. This created a jurisdictional loop in which no state entity could investigate or remedy judicial misconduct, effectively immunizing WCC judges from accountability and denying Plaintiff any forum to challenge biased or unconstitutional adjudication.

c. **Denial of Meaningful Opportunity to Be Heard:** The WCC permitted Gallagher Bassett to rely on altered medical records and fraudulent progress reports without requiring sworn testimony, cross-examination, or independent verification. Plaintiff was denied the opportunity to present uncontradicted medical evidence showing active DVTs, PEs, and permanent disability because the WCC accepted Heflin Medical's false summaries as binding, also repeatedly refusing Plaintiff to be present for court hearings under both legal representation Black and Hahn.

d. **Failure to Provide Adequate Post-Deprivation Remedy:** The Oklahoma Workers' Compensation Act's exclusive remedy provision, as interpreted by the Oklahoma Supreme Court in Deanda v. AIU Insurance, 2004 OK 54, 98 P.3d 1080, and as applied by the WCC, has been interpreted to bar common law tort remedies for pre-award and post-award bad faith conduct. This interpretation, combined with the removal of COJC jurisdiction, has eliminated any adequate state post-deprivation remedy for constitutional violations, forcing Plaintiff into federal court.

69. The deprivation of Plaintiff's procedural due process rights was not merely negligent. It was the result of a structural constitutional defect engineered by the State of Oklahoma—placing adjudicative power in executive branch ALJs, removing judicial oversight, and insulating the workers' compensation system from meaningful review—which has the intended and actual effect of denying injured workers any remedy for constitutional violations.

70. As a direct and proximate result of these procedural due process violations, Plaintiff has suffered and continues to suffer:

- Denial of life-saving medical treatment;
- Wrongful termination of disability benefits;

- Physical injuries including recurrent DVTs, PEs, and permanent venous damage;
- Mental anguish, PTSD, and suicidal ideation;
- Financial devastation and loss of housing;
- Permanent disability and loss of earning capacity.

**COUNT II**

**DEPRIVATION OF SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION**

**(42 U.S.C. § 1983 Against Judge Inhofe, the WCC, Drummond, and the State of Oklahoma)**

71. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

72. The Fourteenth Amendment protects against governmental conduct that "shocks the conscience," infringes upon fundamental rights, or denies equal protection of the laws. Rochin v. California, 342 U.S. 165 (1952); Washington v. Glucksberg, 521 U.S. 702 (1997).

73. Defendants' conduct shocks the conscience:

- Intentionally depriving a catastrophically injured worker of FDA Black Box anticoagulation medication for over two years, against the orders of seven treating physicians, knowing that such deprivation would cause recurrent blood clots, pulmonary embolisms, and death;
- Facilitating the alteration of medical records to fraudulently terminate benefits;
- Removing judicial oversight mechanisms to insulate misconduct from accountability;
- Ignoring repeated emergency room visits, life-threatening conditions, and pleas for help;
- Leaving a permanently disabled worker with no income, no housing, and no medical care.

74. Defendants' conduct also constitutes a denial of equal protection. The State of Oklahoma, through its workers' compensation system, provides a statutory scheme intended to protect injured workers. However, by removing judicial oversight, refusing to investigate insurance fraud, and permitting insurers to manipulate medical records with impunity, the State has created a system in which injured

workers are denied the protections afforded to all other litigants and citizens. Plaintiff has been treated differently from other injured workers and other litigants in Oklahoma courts because the State has deliberately removed the accountability mechanisms that would otherwise protect him.

75. As a direct and proximate result of these substantive due process and equal protection violations, Plaintiff has suffered catastrophic physical, mental, and financial injuries.

**COUNT III**

**COMMON LAW BAD FAITH**

**(Against Gallagher Bassett Services, Inc.)**

76. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

77. The Oklahoma Supreme Court has recognized that a common law tort action exists for an insurance carrier's bad faith in handling a workers' compensation claim. *Sizemore v. Continental Cas. Co.*, 2006 OK 36, 142 P.3d 47; *Meeks v. Guarantee Insurance Co.*, 2017 OK 17, 392 P.3d 278. In *Meeks*, the Court held that a claimant "must have a common law remedy of bad faith" when an insurer engages in "intentional, malicious, and bad faith refusal to pay" despite "flagrant violations of multiple court orders."

78. The Mississippi Supreme Court, addressing Gallagher Bassett specifically, held that a workers' compensation carrier can be liable for an independent intentional tort when its bad faith conduct causes injuries "separate and distinct from the original work injury." *Gallagher Bassett Services, Inc. v. Malone*, 30 So. 3d 301 (Miss. 2010). The Wisconsin Supreme Court, also addressing Gallagher Bassett, held that a bad faith tort claim against a workers' compensation administrator is not barred by the exclusive remedy provision because the injury from bad faith handling is "separate and distinct from the original injury." *Aslakson v. Gallagher Bassett Services, Inc.*, 729 N.W.2d 712 (Wis. 2007).

79. Gallagher Bassett owed Plaintiff a duty of good faith and fair dealing arising from its contractual and statutory obligations.

80. GB breached this duty by:

- Repeatedly denying FDA Black Box Warning anticoagulation medications — **Xarelto (rivaroxaban)** and **Eliquis (apixaban)** — prescribed by Est. seven treating physicians over a two-year period
- Discontinuing Xarelto and Eliquis despite knowing abrupt cessation triggers rebound hypercoagulability, recurrent DVTs, and life-threatening PEs
- Altering medical records to fraudulently establish MMI
- Directing Heflin Medical to submit fraudulent progress reports omitting DVTs, PEs, and permanent disability
- Causing Dr. Zimmerman to discharge Plaintiff while actively experiencing DVTs and PEs
- Pressuring Dr. Lorton's staff to alter medical records
- Refusing to pay over $25,000 in medical bills placed in Plaintiff's name
- Terminating weekly TTD payments based on fraudulently altered documents

81. GB's conduct was intentional, malicious, and committed with conscious disregard for Plaintiff's life. GB knew that FDA Black Box Warning anticoagulation medication was keeping Plaintiff alive and that discontinuing it would cause blood clots, PEs, and death — yet deliberately denied it anyway.

82. As a direct result, Plaintiff suffered five DVTs, multiple PEs, permanent venous insufficiency, PTSD, depression, total disability, and financial devastation.

---

**COUNT IV — FRAUD, INTENTIONAL MISREPRESENTATION, AND IIED**

***(Against Gallagher Bassett, Heflin Medical, and Nick Crews)***

83-88. GB and Heflin engaged in a scheme to defraud the WCC through material false statements in Progress Reports #4-9 (falsely claiming MMI, omitting DVTs/PEs, omitting permanent disability). GB knew these were false because it received ER records, Dr. Kennedy's records, Dr. Nusrat's records, and pharmacy denial records.

89. GB, Heflin Medical, and Nick Crews' conduct was extreme and outrageous. They intentionally deprived a catastrophically injured man of **FDA Black Box Warning life-saving medication (Xarelto and Eliquis)**, altered medical records, submitted fraudulent

documents to a court, steered medical professionals away from necessary care, and left him to suffer blood clots, PEs, financial ruin, and suicidal despair.

90. Plaintiff suffered severe emotional distress, PTSD, major depressive disorder, and recurring suicidal ideation.

---

## COUNT V — LEGAL MALPRACTICE, BREACH OF FIDUCIARY DUTY, AND FRAUD

***(Against Kathryn Black)***

**91-95.** Black breached duties by:

- Failing to challenge Heflin Medical's fraudulent progress reports
- Concealing Dr. Kennedy's PE records from the court
- Protecting Heflin Medical's fraudulent conduct
- Failing to compel authorization of prescribed anticoagulation
- Failing to file necessary motions
- Abandoning Plaintiff after confrontation
- Placing an improper attorney lien preventing retention of new counsel
- Refused to present court case filings to Plaintiff, to hide fraud and records omitted from case

---

## COUNT VI — NEGLIGENCE AND GROSS NEGLIGENCE

***(Against Gallagher Bassett and Heflin Medical)***

96-100. Defendants breached duties through gross negligence by:

- Failing to authorize anticoagulation despite seven prescriptions and repeated DVTs/PEs
- Failing to investigate or respond to ER visits
- Heflin Medical's intentional omission of DVTs, PEs, and permanent disability from progress reports

---

## COUNT VII — VIOLATION OF OKLAHOMA UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

***(Against Gallagher Bassett)***

101-106: GB violated 36 O.S. §§ 1250.1 et seq. by:

- Flagrantly denying **FDA Black Box Warning anticoagulation medications (Xarelto and Eliquis)** in conscious disregard of medical evidence
- Failing to conduct reasonable investigation of recurrent DVTs and PEs
- Misrepresenting medical condition to WCC through altered records
- Refusing to pay medical bills without reasonable basis
- Compelling Plaintiff to file pro se motions by refusing statutorily mandated treatment

---

## COUNT VIII — VIOLATION OF THE OKLAHOMA CONSTITUTION

***(Against Judge Inhofe, WCC, Drummond, and the State of Oklahoma)***

107-112: Violations of Article 2, Sections 6 and 7:

- Depriving Plaintiff of liberty interest in bodily integrity and life through deliberate denial of life-saving medication
- Depriving property interest in workers' compensation benefits without fair procedures
- Creating structural deprivation of due process through AG Opinion 2024-17
- Denying "speedy and certain remedy" by accepting fraudulent records and ignoring uncontradicted evidence
- Administering justice with "denial, delay, and prejudice"

---

**PART 3 — Lines 454-604 (Count IX through End)**

## COUNT IX — TORTIOUS INTERFERENCE WITH PHYSICIAN-PATIENT RELATIONSHIP, FRAUD, AND INTENTIONAL MISCONDUCT

***(Against Nick Crews)***

113: Incorporation by reference.

114: Crews owed Plaintiff a duty to refrain from interfering with his medical care. Crews is an attorney with **no medical training or licensure**.

115: Crews breached this duty by:

- Personally contacting treating physicians to steer medical care away from medically necessary treatment
- Refusing and blocking referrals ordered by Dr. Nusrat for further necessary care
- Contacting multiple doctors to influence and steer Plaintiff's medical care
- Participating in the wrongful dismissal of Dr. Zimmerman while Plaintiff had active DVTs and PEs
- Falsely representing that prescriptions had been approved at CVS when they had not been
- Repeatedly moving to dismiss WCC hearings despite unaddressed consequential injuries
- Conspiring with GB and Heflin Medical to deny life-saving **FDA Black Box Warning anticoagulation medication (Xarelto and Eliquis)**

116: Crews' conduct was intentional and **outside the scope of attorney immunity**. An attorney defending a workers' compensation claim does not have immunity to personally interfere with medical treatment, contact physicians to alter care, or make false representations about medication approvals.

117: As a result, Plaintiff suffered denial of referrals, worsening condition, additional DVTs and PEs, and severe emotional distress.

---

## VI. PRAYER FOR RELIEF

### A. Declaratory and Injunctive Relief

1. Declare AG Opinion 2024-17 unconstitutional to the extent it removes COJC jurisdiction over WCC ALJs.
2. Declare WCC's acceptance of fraudulently altered records violates due process.

3. **Enjoin GB from denying FDA Black Box Warning anticoagulation medications (Xarelto/rivaroxaban and Eliquis/apixaban)** and order immediate authorization of lifelong anticoagulation as prescribed by Dr. Nusrat.
4. Enjoin GB from interfering with or altering medical records.
5. Enjoin Heflin Medical from submitting fraudulent reports.
6. Enjoin Kathryn Black from enforcing any attorney lien.
7. **Enjoin Nick Crews from personally contacting, influencing, or interfering with Plaintiff's treating physicians, medical care, or physician-patient relationships.**
8. Order full evidentiary hearing with independent medical examination.

**B. Compensatory Damages**

9. Against GB for physical pain, mental anguish, medical expenses, lost wages, permanent impairment (PTD), unpaid medical bills, future medical bills related.
10. Against Heflin Medical for fraud and IIED.
11. Against Kathryn Black for legal malpractice.
12. **Against Nick Crews for tortious interference, fraud, and intentional misconduct.**
13. Against state actor defendants for constitutional violations.

**C. Punitive Damages**

14-17. Against GB, Heflin Medical, Kathryn Black, and **Nick Crews** for intentional, malicious conduct.

**D. Attorney Fees and Costs**

18. Pursuant to 42 U.S.C. § 1988 and applicable provisions.

**E. Other Relief**

19. Such other relief as the Court deems just and proper.

---

**VII. JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues.

Signed/Dated: Ronald James Lamb Jr - [signature]

Signature Block:

Ron Lamb
150 West Maple
Fairfax OK 74637
RonLambsLegal@GMail.com 9184409695

## VIII. EXHIBIT INDEX

The Complaint references 25 exhibits including:

- COJC Letter (Exhibit A)
- Dr. Nusrat hematology records (Exhibit 1)
- Dr. Kennedy pulmonology records (Exhibits 2.1, 2.2)
- Dr. Zimmerman cardiology (Exhibit 3)
- Dr. Nunley orthopedic (Exhibit 4)
- Dr. Lorton records including MMI fraud (Exhibits 5.1, 5.2)
- Dr. Griffin original injury records (Exhibit 6.1)
- Premier Family Care records (Exhibits 6.3, 6.4)
- Heflin Medical progress reports (Exhibit 7.1)
- Bloodwork (Exhibit 7.2)
- Radiological studies (Exhibit 7.3)
- Disability/handicap records (Exhibit 7.4)
- Brittany Heflin texts/emails (Exhibit 7.5)
- Pro se WC forms and motions (Exhibits 8.1-8.6)
- **Dr. Barkat venous mapping (Exhibit 9)**
- **ER records (Exhibit 10)**
- Kathryn Black file and lien (Exhibit 11)
- Hahn attorney communications (Exhibit 12)
- Financial devastation evidence (Exhibit 13)
- AG complaint correspondence (Exhibit 14)
- **AG Opinion 2024-17 (Exhibit 15)**

Ron Lamb signed/dated [signature] 8-19-2026

Ronald James Lamb Jr
150 West Maple
Fairfax OK 74637
RonLambsLegal@gmail.com 9184409695

- Signature Block